**AMF INCORPORATED, by change of name from American Machine & Foundry Co., Appellant,**

v.

**AMERICAN LEISURE PRODUCTS, INC., assignee by merger and change of name of Goldfish Sailboat Co., Inc., Appellee.**

Patent Appeal No. 8920.

United States Court of Customs and Patent Appeals.

March 22, 1973.

Walter Lewis, Chicago, Ill., atty. of record, for appellant. Dos T. Hatfield, Washington, D. C., of counsel.

Howard E. Moore, Dallas, Tex., atty. of record, for appellee.

Before MARKEY, Chief Judge, and RICH, ALMOND, BALDWIN and LANE, Associate Judges.

ALMOND, Senior Judge.

This appeal is from the decision of the Trademark Trial and Appeal Board [1] dismissing opposition to the application [2] by American Leisure Products, Inc., to register the mark reproduced below for sailboats based on use since October 6, 1967.

GOLDFISH

Appellant's opposition was based on its ownership of the registered marks for sailboats SAILFISH SPORTABOUT and fish design,[3] ALCORT SUNFISH,[4]

---

1. 167 USPQ 372 (1970).

2. Serial No. 284,190 filed November 6, 1967.

3. Reg. No. 532,849, issued October 31, 1950 to a predecessor-in-title.

4. Reg. No. 674,879, issued March 3, 1959 to a predecessor-in-title.

ALCORT CATFISH,[5] FLYING FISH,[6] and the following design mark: [7]

Appellant asserts that there is actual and likelihood of confusion between its marks, considered individually or as a family of fish names and fish design marks for sailboats, and that sought to be registered by appellee. Both parties took testimony and introduced various exhibits into evidence.

On this appeal there is no issue as to priority and appellee conceded that the sailboat sold under the trademark GOLDFISH is similar in appearance and design to appellant's SUNFISH boat. The question to be resolved is whether, within the meaning of § 2(d) of the Trademark Act (15 U.S.C. § 1052(d)), appellee's mark so resembles those registered by appellant as to be likely to cause confusion, mistake or to deceive. We believe the answer to that question should have been an affirmative one and, therefore, reverse the decision of the board.

The board first concluded from the record that appellant had failed to establish that it had a family of "fish" name trademarks for sailboats. Its reasoning was:

* * * it is a common practice in the sailboat trade to use names and designs of fish, either alone or in combination, on sailboats as a means of identification therefor. Under such a circumstance, it is difficult to perceive how opposer could possibly acquire a family of marks in either "fish" names or in its composite marks.

The board then considered the individual marks owned by appellant relative to that sought to be registered and concluded:

* * * applicant's composite mark does not so resemble "SAILFISH", "SUNFISH", "CATFISH" or "FLYING FISH", and the respective silhouette designs of these fish as to lead to a likelihood of confusion or mistake.

■ We find in the record insufficient evidence to support the conclusion that appellant has failed to establish a family of marks for sailboats in which the word "fish" appears as part of the mark. From the record it appears that appellant has sold more than 50,000 sailboats under its trademarks and total sales have reached millions of dollars. One of appellee's own witnesses testified that appellant's SAILFISH and SUNFISH type boats are the largest selling classes of boats in the country. By contrast, sales of appellee's GOLDFISH, which is a craft similar to the SUNFISH, had not reached 600 units when the pertinent testimony was taken.

■ The record also supports appellant's contention that it advertised its products as a family. For example, advertising brochures usually describe two or more of the products together. The board apparently agreed, for it said " * * * there is no doubt but that opposer has advertised its marks as a family of 'fish' trademarks." In its brochures appellant combines its registered trademarks with a fish silhouette corresponding in shape to that of the particular fish name in the mark being promoted. The boats themselves carry on their sails a silhouette of the fish for which they are named.

5. Reg. No. 774,866, issued August 11, 1964 to a predecessor-in-title.

6. Reg. No. 706,912, issued November 8, 1960 to a predecessor-in-title.

7. Reg. No. 671,114, issued December 16, 1958 to a predecessor-in-title.

The record against appellant was assessed by the board in the following way:

Applicant's record additionally shows that in past years there has been a "fish" class of sailboats both on the Gulf Coast and in New England and that some of these boats, which picture a fish on the sail, are still in use for sailing purposes. Additionally, there are of record seven third-party registrations for marks which include the word "fish" for sailboats and/or boats. In addition, recent trade publications list various trademarks including "BARRACUDA", "BONITA", "PIRATE FISH", "PORPOISE", "PUFFIN", SAIL-FISH",[8] "STARFISH", "STINGRAY" and "SKATE" for sailboats. Pictures of these boats in such publications as "One-Design & Offshore Yachtsman" and the "Sailboat Directory" frequently picture the design of a fish on the upper part of the sail.

We do not think the evidence relied upon by the board is sufficient to rebut that of appellant tending to establish its claim that it has a family of marks. Appellee's own witness testified that the so-called "Fish" classes of sailboats have not been manufactured for at least 20 years. The Gulf Coast variety, once used as an interclub racing boat, has been superseded by another craft. It appears that the New England variety has not been made since the 1930's and a newer version is now known as the "Marlin" class. At any rate, we do not feel that a class of boats referred to as "Fish" boats diminishes the trademark distinctiveness of fish names having as a part thereof the word "fish" when applied to sailboats.

■■ It appears that the board relied heavily upon the existence of third-party trademark registrations in reaching its decision. We have frequently said that little weight is to be given such registrations in evaluating whether there is likelihood of confusion. The existence of these registrations is not evidence of what happens in the market place or that customers are familiar with them nor should the existence on the register of confusingly similar marks aid an applicant to register another likely to cause confusion, mistake or to deceive. In re Helene Curtis Industries, Inc., 305 F.2d 492, 49 CCPA 1367 (1962); J. C. Hall Co. v. Hallmark Cards, Inc., 340 F.2d 960, 52 CCPA 981 (1965); Lilly Pulitzer, Inc. v. Lilli Ann Corp., 367 F.2d 324, 54 CCPA 1295 (1967); In re Belgrade Shoe Co., 411 F.2d 1352, 56 CCPA 1298 (1969); Clariol, Inc. v. Roux Laboratories, Inc., 442 F.2d 980, 58 CCPA 1170 (1971).

■ We think the listing of trademarks for boats in various trade magazines should be treated in a similar manner as are third-party registrations. They give no indication as to actual sales, when the mark was adopted, customer familiarity with the marks, etc. Their evidentiary scope and effect is merely to show promotion of the listed item in the particular issue of the trade publication where the listing appeared. Gravel Cologne, Inc. v. Lawrence Palmer, Inc., 469 F.2d 1397, 60 CCPA —— (1972).

The board obviously felt that the multiplicity of fish names used to designate a variety of boats, including sailboats, weakened any distinctiveness of appellant's marks. However, we note that most of these marks appearing in the record adopt names of fish which do not include the word "fish" as part of the mark. Yet, it is clear that appellant's entire advertising effort and marketing scheme is designed to have the public associate with its products only those fish names where the word "fish" forms part of the mark. We see no reason to believe that such a scheme cannot be successful and that words such as SAIL-FISH, CATFISH and the like cannot be distinguished as a class from fish names such as Barracuda, Puffin, Bonita and the like.

---

8. One of appellant's own trademarks.

It is our view that the evidence compels the conclusion that appellant has established a family of marks made up of fish names having the word "fish" common thereto by virtue of extensive use and advertising. This conclusion is not affected because other parties have also used "fish" as a part of a trademark for boats to an undisclosed extent. Motorola, Inc. v. Griffiths Electronics, Inc., 317 F.2d 397, 50 CCPA 1518 (1963).

■■ Having concluded that appellant has established that it possesses a family of "fish" marks, we believe that appellee's mark GOLDFISH and fish design, used on sailboats similar to those sold by appellant, would appear to many to be a member of appellant's family of marks. Aside from its rights arising from its registered trademarks, appellant has established a practice of employing an appropriate fish silhouette with each fish name it adopts to identify different sailboats. It is precisely such a combination that appellee seeks to register. The board stressed that the actual marks involved can be distinguished and would be distinguished by purchasers. However, the question is not whether people will confuse the marks but whether the marks will be likely to cause confusion, mistake or deception. In re West Point-Pepperell, Inc., 468 F.2d 200, 60 CCPA —— (1972). The near identity of the products and the similarity of the marks applied convince us that a likelihood of confusion exists. The decision of the board dismissing the opposition is reversed.

Reversed.