SDB
Paper No. 16

F237

**FOR PUBLICATION IN FULL**

U. S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

Trademark Trial and Appeal Board

In re Clark Surgical Corp.

Serial No. 574,804

M. Arthur Auslander for applicant.

Steven R. Foster, Trademark Examining Attorney, Law Office 4
(Thomas Lamone, Managing Attorney).

Before Rooney, Simms and Hanak, Members.

Opinion by Simms, Member:

Clark Surgical Corp., a New York corporation, has applied
to register the mark shown below for mail order catalog services
and phone order services in the field of first aid kits, first
aid supplies and medical equipment.[1]



<hr>

[1] Serial No. 574,804, filed December 23, 1985, claiming use since
November 1, 1985.

The Examining Attorney has refused registration under Section 2(d) of the Trademark Act, 15 U.S.C. 1052(d), on the basis of Registration No. 1,225,709, issued February 1, 1983, for the mark CRITICARE HN for high nitrogen elemental diet, in International Class 5. That registration is held by Mead Johnson & Company. Because applicant's mark prominently displays the expression CRITI CARE and because registrant's goods may be perceived as emanating from a medical supplier such as applicant, the Examining Attorney argues that confusion is likely. We agree.

While the marks of applicant and the registrant must, of course, be compared in their entireties, it is not improper to give more force and effect to a dominant feature or a more prominent origin-indicating element of a mark. In re National Data Corp., 753 F.2d 1056, 1060, 222 USPQ 749, 752 (Fed. Cir. 1985). In this case, the descriptive or informative phrase "a new generation in Emergency Care Products" does little to help distinguish the source of applicant's services from that of registrant's goods. Similarly, the "electronic pulse" design between the word elements CRITI and CARE, which of course would not be pronounced in ordering supplies and equipment from applicant, is somewhat suggestive of the nature of the products. Also, with respect to the registered mark, the letters HN suggest or describe the high nitrogen aspect of registrant's goods. This fact is both conceded by applicant and supported by references in an acronym dictionary of chemical elements made of record by the

Examining Attorney. Accordingly, if the respective marks, both dominated either by CRITICARE or CRITI CARE, are applied to closely related goods or services, we believe that confusion is likely.[2]

The real question presented by this appeal, we believe, concerns the relatedness of the respective goods and services. Applicant's mail-order and phone-order services are in the field of first aid kits, first aid supplies and medical equipment. The registration reveals little about registrant's goods—a high nitrogen elemental diet—except that that product is in International Class 5 (pharmaceutical, veterinary, and sanitary substances; infants' and invalids' foods; plasters, material for bandaging; etc.). However, the Examining Attorney has introduced material obtained from the NEXIS computerized search system which, we believe, helps explain the nature of registrant's goods, the channels in which those goods are sold and their potential purchasers and users. The following excerpts are illustrative:

> Predigested (elemental) diets have been preferred for early postoperative jejunal feeding, the ideal composition of nutrient solutions for jejunal...

---

[2] With respect to the third-party registrations referred to by applicant, not only did those registrations issue for specifically different marks, goods and services (CRITICAL CARE for skin care lotion, CRITICAL CARE QUARTERLY for medical journal, CRITICAL CARE EMERGENCY DECISIONS for medical magazine, CRITIKON for oxygen analyzer, CRITICAL CARE... WHAT'S NEW! for educational seminars, etc.), but also they are entitled to little weight in the absence of evidence of actual use. Moreover, they do not justify the registration of a mark which is likely to cause confusion with another. AMF Inc. v. American Leisure Products, Inc., 474 F.2d 1403, 177 USPQ 268, 269 (CCPA 1973). There is nothing of record to show that the mark CRITICARE is used by another in the medical field or that the registered mark is "weak."

(Am Fam Physician, March 1985)

\* \* \* \*

The authors' early experience with feeding jejunostomy was largely influenced by other series in which needle catheters and elemental diets were used. However, troublesome plugging developed when isosmotic preparations were infused through needle catheters into the jejunum, despite the use of volumetric...

(Am Fam Physician, December 1985)

\* \* \* \*

Initial therapy included bowel sterilization, elemental diet with protein restriction, vitamin and iron supplementation, salt and water restriction, and...

(Arch Intern Med, October 1984)

\* \* \* \*

Nutrition is a major concern, and elemental diet or even total parenteral nutrition is often necessary to reverse growth failure. Steroids are often beneficial and can be ...

(Am Fam Physician, May 1984)

\* \* \* \*

...statements that in a patient who has normal digestive and absorptive capacity of the bowels, one should not use elemental diets in place of normal tube feedings, and we prefer hospital blenderized liquid diets rather than the...

(Crit Care Med, March 1984)

\* \* \* \*

... refused to take the formula and two developed more extensive diarrhea that necessitated total parenteral nutrition or a semi-elemental diet.

> While no direct comparison was made with
> formulas containing monosaccharides or
> disaccharides, those formulas containing
> corn syrup sugars appeared to be...

(Am Fam Physicians, January 1984)

* * * *

> ... gastrointestinal tract secretions.
> Weizman and associates have shown that
> continuous nasogastric drip feedings--rather
> than periodic feeding--with an elemental
> diet can be a satisfactory and safe
> alternative for total parenteral nutrition
> in infants with severe prolonged diarrhea.

(Am Fam Physician, September 1983)

From a review of this material, it is clear that elemental diets are predigested or easily digestible diets given orally or by tube feeding to hospital patients, including those who are recovering from surgery, who are unable to digest ordinary foods. Registrant's goods, it is clear, are directed to the medical profession and to the providers of medical services, such as clinics and hospitals, which would be the same class of purchasers (hospital purchasing agents, for example) and users (nurses, medics, technicians, etc.) to whom applicant's services of supplying first aid kits, supplies and medical equipment are rendered. While it is true that some purchasers and users of applicant's services (and the products supplied by applicant) and registrant's diets might be considered somewhat sophisticated and perhaps less susceptible to confusion, this cannot be said to apply to all such purchasers and users of the respective products

and services. Moreover, even purchasers who are knowledgeable do not necessarily recognize and distinguish between very similar trademarks and are not immune to confusion.

The Examining Attorney has also introduced third-party registrations demonstrating that the same entity (such as a pharmaceutical company) has applied for and obtained registrations of the same mark for such goods as medical instruments, medical equipment and first aid kits, on the one hand, and such goods as dietary supplements and dietetic and nutritional preparations, on the other. This evidence, coupled with the evidence referred to above which explains the nature, purpose, users and purchasers of elemental diets, demonstrates to our satisfaction the commercial relatedness of applicant's services to registrant's goods. Accordingly, and although the mark of the registrant may have some suggestive connotation, we believe that purchasers of applicant's services and users of products supplied by applicant who encounter registrant's mark used in connection with a nutritional preparation used in the hospital environment are likely to assume that registrant's CRITICARE HN diet is another medical or health care product which emanates from the same source as applicant's first aid and medical equipment supply services under the mark sought to be registered. The fact that the Examining Attorney has not shown that registrant's product is an emergency care product, as applicant has argued, is not determinative. Accordingly, and

6

Serial No. 574,804

resolving all doubt, as we must, in favor of the registrant and
the prior user, we affirm.[3]

Decision: The refusal of registration is affirmed.

L. E. Rooney

R. L. Simms

E. W. Hanak
Members, Trademark
Trial and Appeal Board

.FEB 1 6 1988

---

[3] Contrary to applicant's argument, the case which it has cited,
In re Bel Paese Sales Co., 1 USPQ2d 1233, 1236 (TTAB 1986), is
inapposite. The rule concerning resolving doubt is different in
merely descriptive cases. Compare, for example, Specialty Brands,
Inc. v. Coffee Bean Distributors, Inc., 748 F.2d 669, 229 USPQ
1281, 1285 (Fed. Cir. 1984) and cases cited therein.

7