THIS OPINION IS CITABLE AS
PRECEDENT OF THE TTAB

Hearing:                          Mailed:  July 20, 2006
January 4, 2006                                      PTH

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re White
_____

Serial No. 78146926
_____

Eugene Berman of Law Offices of Eugene Berman for Julie White.

M. Catherine Faint, Trademark Examining Attorney, Law Office 103 (Michael Hamilton, Managing Attorney).
_____

Before Hairston, Kuhlke and Walsh, Administrative Trademark Judges.

Opinion by Hairston, Administrative Trademark Judge:

Julie White, a United States citizen and a member of the St. Regis Band of Mohawk Indians of New York, has applied to register MOHAWK (in standard character form) on the Principal Register as a trademark for "cigarettes."[1]

The trademark examining attorney has refused registration under Section 2(a) of the Trademark Act, 15 U.S.C. §1052(a), on the ground that when MOHAWK is used on

---

[1] Serial No. 78146926, filed July 24, 2002, based on a bona fide intention to use the mark in commerce on the goods.

cigarettes, it "may falsely suggest a connection with the federally recognized tribe the St. Regis Band of Mohawk Indians of New York." (Examining Attorney's Brief at unnumbered p. 1).

When the refusal of registration was made final, applicant appealed. Applicant and the examining attorney have filed briefs, and an oral hearing was held.

Evidentiary Objections and the Record

Before discussing the record, we must first consider the evidentiary objections. Applicant objected to certain of the web pages made of record by the examining attorney on the ground that the "URL line" and date were not provided. We note that the examining attorney has furnished this information, and at the oral hearing, applicant's attorney withdrew the objections. Thus, we deem the web pages at issue to be properly of record.

The examining attorney has "objected" to the reference in applicant's brief to "95 marks in which the term MOHAWK is all or part of the mark" because applicant has made of record copies of only 26 such registrations. Applicant's reference to "95 marks" is based on the results of a search of the USPTO's TESS database of applications and registrations of marks which consist of or include the term "Mohawk" which applicant made of record during the

prosecution of the application.  As such, the search results will be considered, but the probative value thereof, as discussed infra, is extremely limited.

We turn then to the record.  In support of her initial refusal of registration, the examining attorney made of record web pages which she maintains show that Indian tribes, and the St. Regis Band of Mohawk Indians of New York (hereinafter "Mohawk tribe"), in particular, manufacture and sell cigarettes.  With her final refusal of registration, the examining attorney made of record five dictionary definitions of the term "Mohawk" and a "Wikipedia" excerpt for "Mohawk" to support her position that MOHAWK is the same as, or a close approximation of, the Mohawk tribe and that "consumers are likely to recognize that the term [MOHAWK] describes the tribe." (Examining Attorney's Final office action at unnumbered p. 2).  Also, the examining attorney submitted web pages which show that members of the Mohawk tribe mainly inhabit New York and Canada.  With her response to applicant's request for reconsideration, the examining attorney submitted more web pages to show that Indian tribes manufacture and sell cigarettes; and an excerpt from a reference work entitled "American Indian Reservations and Trust Areas," published in 1996 by Tiller Research.  This publication provides

3

information about Native American tribes, including the Mohawk tribe. The examining attorney submitted this excerpt to show that the Mohawk tribe is engaged in many business enterprises, including the operation of smoke shops.

Applicant, in response to the initial refusal, submitted the results of a "Google" search for the term "Mohawk" which shows 1,280,000 "hits." Of these hits, applicant submitted web pages for "Mohawk Mountain" in Connecticut; "Mohawk College" in Ontario, Canada; "Mohawk State Forest" in Connecticut; and "Mohawk Trail State Forest" and "Mohawk (hiking) Trail" in Massachusetts. Also, applicant made of record a list from a private company's database of third-party applications and registrations for marks which consist of or include the term "Mohawk." Applicant submitted this evidence to show that MOHAWK does not point uniquely and unmistakably to the Mohawk tribe. Further, applicant submitted the results of a "Google" search for the phrase "St Regis Band of Mohawk Indians" which shows 3,180 "hits," along with brief excerpts of nine of the hits. Applicant submitted this evidence to support her contention that there is no federally recognized tribe named the "Mohawk tribe;" that the correct name for the tribe is "St. Regis Band of Mohawk

4

Indians of New York" as shown by the results of the "Google" search; and that MOHAWK does not point uniquely and unmistakably to the Mohawk tribe because there is no Mohawk tribe as such. Applicant also submitted an affidavit wherein she avers that she is Native American and is a member of the St. Regis Band of Mohawk Indians of New York; that her business address is Frogtown Road in Hogansburg, New York within the reservation of the St. Regis Band of Mohawk Indians of New York; and that she is an employee of Native American Trading Associates, a company that manufactures and sells cigarettes under a license granted by the St. Regis Band of Mohawk Indians of New York. Applicant submitted this affidavit as evidence of her connection with the Mohawk tribe.

In her request for reconsideration, applicant submitted a declaration from Susan Jesmer, owner and sole proprietor of Native American Trading Associates, who avers that:

> I am the owner and sole proprietor of Native American Trading Associates, 442 Frogtown Road on Akwesasne, the reservation of the St. Regis Band of Mohawk Indians of New York;
> Native American Trading Associates is exclusively licensed by the trademark owner (Ms. Julie White) to use the trademark MOHAWK™ as set forth in U.S. Application Serial No 78/146,926, filed July 24, 2002, for cigarettes;
> The St. Regis Band of Mohawk Indians of New York is a Federally recognized tribe, with the

5

> reservation of this sovereign nation occupying over 20,000 acres straddling the border between the U.S. and Canada along the St. Lawrence Seaway spanning portions of two New York state counties and two Canadian provinces;
> Native American Trading Associates is licensed to manufacture and to sell cigarettes to licensed wholesalers on Akwesasne, the St. Regis Band of Mohawk Indians of New York reservation by the St. Regis Mohawk Tribe for any brand of the cigarettes (as set forth in the attached license).

Accompanying the declaration are two documents.  One is entitled "SAINT REGIS MOHAWK TRIBE Tobacco Manufacturing License" and is issued to "Native American Trading Associates as evidence of having agreed to the rules and regulations regarding the Manufacturing of Tobacco Products on the SAINT REGIS MOHAWK INDIAN RESERVATION."  Wesley Benedict who is identified as "Compliance Director" signs the license.  It is dated October 4, 2004 and is "valid" from October 5, 2004 to October 5, 2005.  The second document is entitled "SAINT REGIS MOHAWK TRIBE D.B.A. Certificate" and it states that Susie Jesmer has requested to do business as NATIVE AMERICAN TRADING ASSOCIATES, a tobacco manufacturing business operating on the territory of Akwesasne.  The certificate is dated December 27, 2004 and states an expiration date of December 2006.  Mr. Benedict, as Compliance Director, also signed the certificate.  Applicant argues that the declaration, and

6

accompanying license and certificate show "that Applicant is the owner of the MOHAWK mark for cigarettes and that she has the type of connection [to] the St. Regis Band of Mohawk Indians of New York contemplated by Section 2(a) because of (i) [her membership] in the St. Regis Band of Mohawk Indians of New York; (ii) the exclusive license to use the mark MOHAWK for cigarettes which she granted to the Native American Trading Associates and (iii) the contractual relationship with the St. Regis Band of Mohawk Indians of New York of her exclusive licensee (Native American Trading Associates) to make and sell cigarettes."

In addition, applicant submitted a list from the USPTO's TESS database of third-party applications and registrations of marks which consist of or include the term "Mohawk;" printouts of twenty-six registrations and three applications from this same database for the mark MOHAWK per se for various goods; and web pages that discuss the U.S. Army "Mohawk" reconnaissance/attack airplane. Applicant contends that this is further evidence that MOHAWK does not point uniquely and unmistakably to the Mohawk tribe. Finally, applicant submitted an excerpt from the July 12, 2003 Federal Register which sets forth the names of all federally recognized Native American tribes. The name "Saint Regis Band of Mohawk Indians of New York"

is listed therein, but the name "Mohawk" is not.  Again, applicant argues that this shows that MOHAWK does not point uniquely and unmistakably to the Mohawk tribe because there is no Mohawk tribe as such.

The Section 2(a) refusal

Section 2(a) prohibits, inter alia, the registration of a mark if it "consists of or comprises … matter which may … falsely suggest a connection with persons, living or dead, institutions, beliefs, or national symbols."  As the Court explained in The University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co., Inc., 703 F.2d 1372, 217 USPQ 505, 508 (Fed. Cir. 1983), Section 2(a) was designed to protect "the name of an individual or institution which was not a 'technical' trademark or 'trade name' upon which an objection could be made under Section 2(d)."  Further, the Court stated that Section 2(a) embraces the concepts of the right of privacy and the related right of publicity. 217 USPQ at 509.  To support a refusal under the "falsely suggests a connection" clause of Section 2(a), it is the examining attorney's burden to show:  (1) that the mark is the same as, or a close approximation of, the name or identity previously used by another person or institution; (2) the mark would be recognized as such, in that it points uniquely and unmistakably to that person or institution;

8

(3) the person or institution named by the mark is not connected with the activities performed by applicant under the mark; and (4) the fame or reputation of the person or institution is such that, when the mark is used with the applicant's goods or services, a connection with the person or institution would be presumed.  See Buffett v. Chi-Chi's, Inc., 226 USPQ 428 (TTAB 1985).  See also, In re Sloppy Joe's International Inc., 43 USPQ2d 1350 (TTAB 1997); and In re Kayser-Roth Corp., 29 USPQ2d 1379 (TTAB 1993).

The examining attorney argues first that MOHAWK is the same as or a close approximation of the name for the federally recognized tribe the St. Regis Band of Mohawk Indians of New York, and second that the public would recognize MOHAWK as identifying this tribe, that is, the term MOHAWK points uniquely and unmistakably to the Mohawk tribe.  In support of her position on these two matters, the examining attorney relies on five dictionary excerpts, of which the following two are representative.  One excerpt is from The American Heritage Dictionary of the English Language (Third Edition 1992 online edition) wherein "**Mohawk**" is defined as:

a.  A Native American people formerly inhabiting northeast New York along the Mohawk and upper Hudson valleys north to the St. Lawrence River with present-

9

day populations chiefly in southern Ontario and
extreme northern New York.  The Mohawk were the
easternmost member of the Iroquois confederacy.
b.  A member of the people.

Another excerpt is from the Merriam-Webster Online
Dictionary wherein "**Mohawk**" is defined as:

1.  a member of an American people of the Mohawk
    valley of New York;
2.  the Iroquois language of the Mohawk people;
3.  a hairstyle with a narrow center strip of
    upright hair and the sides shaved.

Applicant, on the other hand, argues that MOHAWK is
not the same as or a close approximation of the name St.
Regis Band of Mohawk Indians of New York, and that the
public would not recognize MOHAWK as identifying the Mohawk
tribe, that is, the term MOHAWK does not point uniquely and
unmistakably to the Mohawk tribe.  Applicant contends that
the examining attorney's analysis overlooks the other
significant terms in the name of the tribe; St. Regis and
New York.  Further, applicant argues that as evidenced by
the dictionary definitions, the term "Mohawk" has other
meanings, and that the term is "broadly and commonly used
to refer to numerous other geographic areas, institutions,
products, etc." and therefore the term cannot be
unmistakably associated with the designation for the
federally recognized Mohawk tribe.  (Applicant's Brief at
p. 9).

10

We consider first whether MOHAWK is the same as or a close approximation of the designation for the federally recognized tribe St. Regis Band of Mohawk Indians of New York. As the Board stated in another case involving this applicant, In re Julie White, 73 USPQ2d 1713, 1719 (TTAB 2004)[APACHE would falsely suggest a connection between applicant and the federally recognized Apache Native America tribes], "an applicant cannot take a significant element of the name of another and avoid a refusal by leaving one or more elements behind, provided that that which has been taken still would be unmistakably associated with the other person." In this case, we are not persuaded by applicant's argument that MOHAWK is not the same as or a close approximation of the designation for the federally recognized St. Regis Band of Mohawk Indians of New York because the terms St. Regis and New York are not included in applicant's mark. We find that the dictionary definitions submitted by the examining attorney are sufficient to establish that MOHAWK is the same as or a close approximation of the federally recognized tribe St. Regis Band of Mohawk Indians of New York.

As to whether MOHAWK points uniquely and unmistakably to the Mohawk tribe, applicant argues that "the [Merriam-Webster Online Dictionary] excerpt defines the term

11

'Mohawk' to mean either (1) a <u>member</u> of <u>an</u> American Indian people of a specified place, (2) a <u>language</u> or (3) a type of <u>haircut</u>, but not as a <u>tribe</u> or certainly not <u>the</u> 'Mohawk Tribe,' with which the Examining Attorney has alleged a connection." (emphasis in original) (Applicant's brief at p. 7). Because the term "Mohawk" has "other" meanings, applicant argues that it cannot point uniquely and unmistakably to the Mohawk tribe. However, each of these other meanings is associated with the Mohawk tribe. The first is the name for a member of the Mohawk tribe. The second is the language spoken by the tribe, and the third is the name of a hairstyle associated with members of the tribe. With respect to the last meaning, we judicially notice[2] the following definitions:

> **Mohawk**[2]: A hairstyle in which the scalp is shaved except for an upright strip of hair that runs across the crown of the head from the forehead to the nape of the neck. [After MOHAWK¹.] <u>The American Heritage Dictionary of the English Language</u> (Fourth edition 2000).

> **Mohawk**: Style in which entire head is shaved except for upstanding fringe of hair, about 3" high and 2" or more wide, running from front brow to the nape of the neck. Sometimes left long and made to stand up in "Spikes" with gel. See Porcupine. Der. Adapted from style worn by

---

[2] The Board may take judicial notice of dictionary definitions. University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co., 213 USPQ 594 (TTAB 1982), aff'd 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).

> Mohawk Indians.  <u>Fairchild's Dictionary of Fashion</u> (Second edition 1988).

These other meanings, then, suggest that the term "Mohawk" is historically associated with the Mohawk tribe.[3]

Applicant also argues that there are so many other uses of "Mohawk" and that the term appears in so many registrations and applications that "Mohawk" cannot be unmistakably associated with the Mohawk tribe.  Applicant has made of record evidence to establish that "Mohawk" is the name of a ski resort, a college, two state forests, and a hiking trail.  Further, applicant has submitted evidence which shows that "Mohawk" has been used by the U.S. Army as the name of an aircraft.

While at first blush this evidence of other uses of "Mohawk" would appear to suggest that the term is not unmistakably associated with the tribe, closer scrutiny reveals otherwise.  The Mohawk Mountain ski resort and one of the Mohawk state forests are both located in northwest Connecticut, an area not far-removed from that part of "present-day" upstate New York which is inhabited by the Mohawk tribe. Mohawk college is located in Ontario, Canada, an area inhabited by the Mohawk tribe.  Mohawk Trail State

---

[3] As noted previously, the examining attorney submitted an excerpt from the "Wikipedia" website concerning the "Mohawk" hair style.  However, we have not relied on this excerpt in reaching our conclusion.

Forest in Massachusetts and the Mohawk (hiking) Trail are both located in the northern part of western Massachusetts, also an area near that part of "present-day" upstate New York which is inhabited by the Mohawk tribe. Insofar as the Mohawk (hiking) Trail is concerned, we note that the printout submitted by applicant for the trail shows a picture of a statue of a Native American. Thus, it is likely that the ski resort, college, both state forests, and hiking trail were named after the Mohawk tribe because of their close proximity to the lands inhabited by the Mohawk tribe. In regard to the use of "Mohawk" by the U.S. Army, we note that the printout submitted by applicant includes a depiction of a Native American which suggests that the aircraft also was named after the Mohawk tribe. Because these places and the aircraft appear to be named after the Mohawk tribe, these uses of "Mohawk" do not detract from the association of the name "Mohawk" with the Mohawk tribe. Thus, we are unable to conclude therefrom that the term "Mohawk" does not point uniquely to the Mohawk tribe.

Insofar as the evidence on which applicant relies to establish that there are other MOHAWK marks in use, this evidence is of limited probative value. The submission of a list of registrations and applications, whether from a

14

private company's database or the USPTO's TESS database, is insufficient to make such registrations and applications of record. See In re Carolina Apparel, 48 USPQ2d 1542, 1542 n. 2 (TTAB 1998) ["The Board does not take judicial notice of third-party registrations, and the mere listing of them is insufficient to make them of record"]. Further, the actual copies of third-party registrations and applications are not evidence that the marks which are the subjects thereof are in use and that the public is familiar with the use of those marks. See, e.g., AMF Inc. v. American Leisure Products, Inc., 474 F.2d 1403, 177 USPQ 268 (CCPA 1973); In re Hub Distributing, Inc., 218 USPQ 284 (TTAB 1983); and In re Duofold Inc., 184 USPQ 638 (TTAB 1974). In this regard, we note that applicant has pointed to no case law holding that third-party registrations and/or applications should be accorded significant weight in our analysis of a Section 2(a) false suggestion refusal. In this case, we are unable to conclude from the third-party MOHAWK registrations and applications that the public is aware of the marks shown therein such that the term "Mohawk" does not point uniquely to the Mohawk tribe.

We now turn to the third factor in the Section 2(a) false suggestion analysis, that is, whether there is a connection of the type contemplated by Section 2(a) between

15

applicant and the Mohawk tribe.  The examining attorney argues that applicant does not have the type of connection contemplated by Section 2(a).  It is the examining attorney's position that applicant's mere membership in the tribe is not enough and that there must be a commercial endorsement of her activities by the tribe.

Applicant, on the other hand, points to the facts that she is a member of the Mohawk tribe, that the Mohawk tribe issued a certificate to applicant's employer, Native American Trading Associates, to manufacture and sell cigarettes, and that applicant has in turn licensed use of her MOHAWK mark to Native American Trading Associates.

In the case of In re Sloppy Joe's International Inc., 43 USPQ2d 1350 (TTAB 1997), the applicant sought to register the mark SLOPPY JOE'S and a representation of Ernest Hemingway for restaurant and bar services.  In affirming the refusal of registration under Section 2(a) on the ground of a false suggestion of a connection with Ernest Hemingway, the Board held that Ernest "Hemingway's friendship with the original bar owner of Sloppy Joe's bar, his frequenting the bar and use of the back room as an office was not the kind of 'connection' contemplated by Section 2(a).  Rather, a commercial connection, such as an ownership interest or commercial endorsement or sponsorship

16

of applicant's services, would be necessary to entitle applicant to register the involved mark." Id. at 1354.

In the more recent case of In re Los Angeles Police Revolver and Athletic Club, Inc., 69 USPQ2d 1630 (TTAB 2003), the applicant, a police athletic club, sought to register the mark TO PROTECT AND TO SERVE for clothing and beverage glasses. The identical phrase "To Protect and To Serve" is the official slogan of the Los Angeles Police Department (LAPD). In reversing the refusal to register under Section 2(a) on the ground of a false suggestion of a connection between the police athletic club and the LAPD, the Board found that the evidence demonstrated that the police athletic club and the LAPD had an extensive mutual relationship for decades. Although there was no formal or written agreement between the police athletic club and the LAPD concerning the club's activities, the evidence showed that the LAPD had "openly advanced the commercial activities of Applicant" and the Board found "a substantial commercial connection between applicant and the LAPD." Id. at 1633. The LAPD's endorsement or sponsorship of the club's specific goods, namely clothing and beverage glasses, was unnecessary; rather a general commercial connection between the club and the LAPD was sufficient.

17

The question, then, is whether a commercial connection has been established between applicant and the Mohawk tribe in light of the facts that applicant is a member of the tribe, the tribe has issued a license and d/b/a certificate to applicant's employer, Native American Trading Associates in connection with manufacturing tobacco products, and applicant has licensed use of her rights in the MOHAWK mark to Native American Trading Associates.

We recognize that, unlike the above cases, applicant is connected to the institution in this case, in the sense that she is a member of the Mohawk tribe. Yet, applicant is but one member of the tribe, and more than one individual can correctly claim a connection to the Mohawk tribe.

To overcome a Section 2(a) refusal in such a situation, a general commercial connection between the applicant and the institution is insufficient. Rather, the commercial connection must be specific and relate to the particular goods and services. In other words, there must be a specific endorsement, sponsorship or the like of the particular goods and services, whether written or implied.

On the facts of this case, we find that a specific commercial connection between applicant and the Mohawk tribe has not been proven. The license and d/b/a

18

certificate issued by the Mohawk tribe to Native American Trading Associates is not evidence that the tribe endorses or is a sponsor of the cigarettes applicant intends to sell. We note that the license is general in nature and simply states that Native American Trading Associates has agreed to the rules and regulations regarding the manufacturing of tobacco products on the Mohawk tribe's reservation. The d/b/a certificate also is general in nature and states that Native American Trading Associates has requested and been approved to operate a tobacco manufacturing business on the reservation. Neither of these documents, however, is a specific endorsement or sponsorship of Native American Trading Associates' activities, and in turn, the cigarettes applicant intends to sell. Thus, we find that these documents do not evidence a specific commercial connection between applicant and the Mohawk tribe.

Further, this is not a situation where we can imply a specific commercial connection between applicant and the Mohawk tribe. While the tribe is undoubtedly aware of Native American Trading Associates' tobacco manufacturing activities, there is no evidence of a long-standing mutual relationship between Native American Trading Associates and the tribe. On the contrary, both the license and d/b/a

19

certificate were issued in 2004 and both are for relatively short periods of time. Moreover, there is no evidence that the Mohawk tribe has openly advanced Native American Trading Associates' tobacco manufacturing activities. In short, this is not a situation where we can imply that the Mohawk tribe has specifically endorsed Native American Trading Associates' tobacco manufacturing activities, and in turn, the cigarettes applicant intends to sell.

The awarding of a federal registration to applicant individually for the mark MOHAWK for cigarettes would amount to the awarding of the tribe's "imprimatur" to the mark. In the absence of a specific commercial connection between the Mohawk tribe and applicant with respect to the goods involved herein, namely, cigarettes, we are unable to find the kind of commercial connection contemplated by Section 2(a).

As to the fourth factor of the Section 2(a) test, we must consider whether the name "Mohawk" is of sufficient fame or reputation that a connection with the federally recognized Mohawk tribe would be presumed by consumers of cigarettes. Here, the test is whether the name "Mohawk" per se is unmistakably associated with the Mohawk tribe, and as used, would point uniquely to the tribe.

20

The record shows that the Mohawk tribe inhabits New York and Canada.  Further, the term "Mohawk" is readily found in dictionaries and in such listings it is defined as Native Americans who inhabit these areas.  The Tiller publication discusses several commercial enterprises of the Mohawk tribe that would contribute to the fame and reputation of the tribe.  The tribe began operating slot machines for gaming in the 1970's.  It also operates a bingo hall which includes a full-service restaurant and a gift shop that sells souvenirs and discount cigarettes. There are two tribal-affiliated steel erector contractors doing business, and the reservation boasts the largest manufacturer of lacrosse sticks in the United States. Other tribal-affiliated businesses include cell phone systems, computers, smokeshops, construction contactors, and stores and galleries which feature handmade Indian arts and crafts.  In addition, the Frogtown International Speedway, a dirt track stock car racing venue is located on the reservation as well as a golf course which has a restaurant, pro shop and bar.  This evidence is more than sufficient to establish that the Mohawk tribe is well known among residents in the region and visitors to the area.

Our final inquiry then is whether consumers of cigarettes would think only of the well-known Mohawk tribe

21

when the name is used on or in connection with cigarettes. In this regard, the record is quite clear that many Native American tribes, the Mohawk and others, run smokeshops, many including Internet sales among their operations. In addition, the record is clear that Native Americans not only are engaged in large-scale marketing of cigarettes, but in manufacturing of Native American brands. As indicated, applicant has stated that she is a member of the Mohawk tribe which is in the business of manufacturing cigarettes through its licensee Native American Trading Associates.

The examining attorney submitted numerous web pages that reveal marketing of Native American brands of cigarettes. One web page shows a national map of cigarette retailers located on Native American reservations, with a banner ad at the top for "cigarettespecials.com" which touts "low prices" and the listing for the "Mohawk Nation Territory" includes "Native American Trading Associates." Another web page is for Discount Indian Tobacco which states "Cigarettes shipped to your door from Sovereign Seneca Indian Territory – Native Brand Cigarettes start at only $11.49 a Carton." An article from the web page for the National Association of Convenience Stores bears the headline "New York Tribe sets Up Kiosks for Tax-Free

22

Cigarettes" and goes on to discuss that the Oneida Nation has installed kiosks in New York convenience stores to allow customers to order tax-free cigarettes. An article from the web page www.indiancountry.com discusses the merger of two Native American online ventures, one of which is AllNative.com and is reported to have "started more than a year ago with sales of American Indian cigarettes, teas and coffee." Finally, an article retrieved from the Nexis database which appeared in Forbes magazine states, in pertinent part, "[a]s one favorable court decision has followed another, the tribes have begun learning to impose taxes productively and to exploit their special territorial status by selling cigarettes, liquor and even gasoline free of state and local taxes."

We find that purchasers of cigarettes would be aware of Native American manufacturing and marketing of Native American brand cigarettes, and, given the fame of the name of the Mohawk tribe, would think uniquely of the Mohawk tribe when they see MOHAWK as a mark used on or in connection with cigarettes.

In sum, we conclude that the record supports a refusal of registration of MOHAWK as a mark for cigarettes because use of the name of the federally recognized St. Regis Band

23

of Mohawk Indians of New York would falsely suggest a connection between applicant and the Mohawk tribe.

**Decision**: The refusal to register under Section 2(a) is affirmed.