This Opinion is a
Precedent of the TTAB

Mailed: June 6, 2018

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re Inn at St. John's, LLC*

_____

Serial No. 87075988

_____

Susan M. Kornfield of Bodman PLC,
    for Inn at St. John's, LLC.

Aubrey Biache, Trademark Examining Attorney, Law Office 123,
    Susan Hayash, Managing Attorney.

_____

Before Bergsman, Masiello and Heasley,
    Administrative Trademark Judges.

Opinion by Bergsman, Administrative Trademark Judge:

Inn at St. John's, LLC ("Applicant") seeks registration on the Principal Register

of the mark 5IVE STEAKHOUSE and design, reproduced below for "restaurant and

bar services," in International Class 43.[1]

---

[1] Application Serial No. 87075988 was filed on June 17, 2016, under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), based upon Applicant's allegation of a *bona fide* intention to use the mark in commerce.



The mark consists of the wording "5ive" in stylized letters, set above the design of an intersecting fork and knife, all set above the word "Steakhouse." Applicant disclaims the exclusive right to use the word "Steakhouse." Also, Applicant claims ownership of Registration No. 3178315 for the mark 5IVE RESTAURANT and design, reproduced below, for "restaurant and bar services," in Class 43.[2]



The registered mark consists of the term "5ive" in the same stylized letters as that element in the applied-for mark set above the word "Restaurant" in the same font as

---

[2] Registered November 28, 2006; Sections 8 and 15 combined declaration accepted and acknowledged; renewed.

the word "Steakhouse" in the application. Applicant disclaimed the exclusive right to use the word "Restaurant."

The Trademark Examining Attorney refused registration of Applicant's mark under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), on the ground that Applicant's mark so resembles the registered mark 5IVESTEAK and design, reproduced below, for "restaurant and bar services," in Class 43, as to be likely to cause confusion.[3]

The colors red and brown are claimed as a feature of the mark. The mark consists of the wording 5IVESTEAK presented in the colors red and brown, with the color red appearing in the number "5" and letters "IVE," and the color brown appearing in the letters "STEAK."

When the refusal was made final, Applicant appealed and requested reconsideration. After the Examining Attorney denied the request for reconsideration, the appeal was resumed. We affirm the refusal to register.

## I.   Evidentiary Issue

Applicant attached search results and copies of third-party registrations from the USPTO electronic database to its appeal brief.[4] The Examining Attorney objected to the exhibits attached to Applicant's brief on the ground that they were not timely

---

[3] Registration No. 3562380, registered January 13, 2009; renewed.

[4] Applicant's Exhibits A-E (7 TTABVUE 21-77).

filed pursuant to Trademark Rule 2.142(d), 37 C.F.R. § 2.142(d).[5] Trademark Rule

2.142(d) reads as follows:

> The record in the application should be complete prior to the filing of an appeal. Evidence should not be filed with the Board after the filing of the notice of appeal. If the appellant or the examining attorney desires to introduce additional evidence after an appeal is filed, the appellant or the examining attorney should submit a request to the Board to suspend the appeal and to remand the application for further examination.

The Examining Attorney's objection is sustained. The evidence submitted with

Applicant's appeal brief that Applicant did not previously submit during prosecution

(including the request for reconsideration) is untimely and will not be considered. *See*

Trademark Rule 2.142(d), 37 C.F.R. § 2.142(d); TRADEMARK TRIAL AND APPEAL BOARD

MANUAL OF PROCEDURE (TBMP) § 1203.02(e) and § 1207.01 (June 2017) and

authorities cited therein.

II.    Likelihood of Confusion.

Our determination under Section 2(d) is based on an analysis of all of the

probative facts in evidence that are relevant to the factors bearing on the issue of

likelihood of confusion. *In re E. I. du Pont de Nemours & Co.,* 476 F.2d 1357,

177 USPQ 563, 567 (CCPA 1973) ("*du Pont*"); *see also In re Majestic Distilling Co.,*

315 F.3d 1311, 65 USPQ2d 1201, 1203 (Fed. Cir. 2003). We have considered each *du*

*Pont* factor that is relevant or for which there is evidence of record. *See M2 Software,*

*Inc. v. M2 Commc'ns, Inc.,* 450 F.3d 1378, 78 USPQ2d 1944, 1947 (Fed. Cir. 2006);

---

[5] Examining Attorney's Brief (9 TTABVUE 5-6).

*ProMark Brands Inc. v. GFA Brands, Inc.,* 114 USPQ2d 1232, 1242 (TTAB 2015) ("While we have considered each factor for which we have evidence, we focus our analysis on those factors we find to be relevant."). In any likelihood of confusion analysis, two key considerations are the similarities between the marks and the similarities between the goods or services. *See In re Chatam Int'l Inc.,* 380 F.3d 1340, 71 USPQ2d 1944, 1945-46 (Fed. Cir. 2004)*; Federated Foods, Inc. v. Fort Howard Paper Co.,* 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976) ("The fundamental inquiry mandated by § 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks."); *see also In re i.am.symbolic, llc,* 866 F.3d 1315, 123 USPQ2d 1744, 1747 (Fed. Cir. 2017) ("The likelihood of confusion analysis considers all *DuPont* factors for which there is record evidence but 'may focus … on dispositive factors, such as similarity of the marks and relatedness of the goods'") (quoting *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002)).

A.  The similarity or dissimilarity and nature of the services and established, likely-to-continue channels of trade.

The services are identical and Applicant does not argue otherwise. Because the services described in the application and the cited registration are identical, we presume that the channels of trade and classes of purchasers are the same. *See In re Viterra Inc.,* 671 F.3d 1358, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012) (legally identical goods are presumed to travel in same channels of trade to same class of purchasers); *In re Yawata Iron & Steel Co.*, 403 F.2d 752, 159 USPQ 721, 723 (CCPA 1968) (where there are legally identical goods, the channels of trade and classes of purchasers are

considered to be the same); *United Glob. Media Grp., Inc. v. Tseng,* 112 USPQ2d 1039, 1049 (TTAB 2014); *Am. Lebanese Syrian Associated Charities Inc. v. Child Health Research Inst.,* 101 USPQ2d 1022, 1028 (TTAB 2011).

> B.  The number and nature of similar marks in use in connection with similar services.

Applicant argues the term 5IVE in the registered mark 5IVESTEAK is a weak term entitled to a narrow scope of protection or exclusivity of use because 5IVE and variations thereof have been registered numerous times.[6] For example, Applicant submitted copies of 21 registrations and applications for marks that include the term 5IVE,[7] two registrations incorporating the word "Fifth" for restaurant services,[8] and one registration for 51 FIFTEEN (stylized) for restaurant and bar services.[9]

First, pending applications are evidence only that the applications were filed on a certain date; they are not evidence of use of the marks. *Nike Inc. v. WNBA Enters. LLC,* 85 USPQ2d 1187, 1193 n.8 (TTAB 2007); *Interpayment Servs. Ltd. v. Docters & Thiede,* 66 USPQ2d 1463, 1468 n.6 (TTAB 2003).

Second, only five of the submitted registrations are arguably related to "restaurant and bar services" and, therefore, the others have limited probative value. *See In re i.am.symbolic, LLC,* 123 USPQ2d at 1751 (disregarding third-party

---

[6] Applicant's Brief, pp. 6-11 (7 TTABVUE 10-15).

[7] March 15, 2017 Response to Office Action (TSDR 12-28).

Citations to the Trademark Status & Document Retrieval Database (TSDR) are to the downloadable .pdf version.

[8] *Id.* at 29-30.

[9] *Id.* at 32.

registrations for other types of goods where the proffering party had neither proven nor explained that they were related to the goods in the cited registration); *In re Thor Tech Inc.,* 90 USPQ2d 1634, 1639 (TTAB 2009) (the third-party registrations are of limited probative value because the goods identified in the registrations appear to be in fields which are far removed from the goods at issue); *see also Key Chem., Inc. v. Kelite Chem. Corp.,* 464 F.2d 1040, 175 USPQ 99, 101 (CCPA 1972) ("The great majority of th[e] registered marks are for goods unrelated to those in issue, and there is no evidence that they are in continued use."). Moreover, of these five registrations, Registration No. 3920114 for the mark THE 5IVE RUSSIANS (standard characters) for wine was cancelled on September 22, 2017, because the registrant failed to file a Section 8 declaration of continued use.[10] The existence of a cancelled registration—particularly one cancelled for failure to provide a declaration of continued use—does not tend to show that the cited mark is weak due to third-party use. A cancelled registration is only evidence that the registration issued and it does not carry any of the legal presumptions under Section 7(b) of the Trademark Act, 15 U.S.C. § 1057(b). *See Bond v. Taylor,* 119 USPQ2d 1049, 1054-55 (TTAB 2016); *In re Kysela Pere et Fils Ltd.,* 98 USPQ2d 1261, 1264 (TTAB 2011) ("'dead' or cancelled registrations have no probative value at all.").

Two third-party registrations are for related but not identical services:

---

[10] *Id.* at 13 and Examining Attorney's Brief (9 TTABVUE 13).

- Registration No. 4294177 for the mark 5IVE CHEFS and design for "kitchen services in the nature of cooking, serving and delivering cuisines of the world";[11] and

- Registration No. 4340762 for the mark G 5IVE and design for "dance clubs services; night clubs."[12]

Two other registrations cover identical services, but contain the non-identical term "Fifth":

- Registration No. 4444969 for the mark FIFTH DINING (standard characters) for "restaurant dining and catering services";[13] and

- Registration No. 2730400 for the mark FIFTH GROUP RESTAURANTS and design for "restaurant and catering services."[14]

In this case there is no evidence of third-party usage, there is only evidence of just a few third-party registrations. The "existence of [third-party] registrations is not evidence of what happens in the market place or that customers are familiar with them." *AMF Inc. v. Am. Leisure Prods., Inc.*, 474 F.2d 1403, 177 USPQ 268, 269 (CCPA 1973). Nevertheless, in determining the degree of weakness, if any, in the shared terms, we must "adequately account for the apparent force of [third-party use

---

[11] March 15, 2017 Response to Office Action at 19.

[12] *Id.* at 21.

[13] *Id.* at 29.

[14] *Id.* at 30. We find Reg. No. 4964359 for 51 FIFTEEN (stylized) to lack probative value because it differs significantly from the marks at issue. It does not integrate the numeral "5" into the mark as a visually similar substitute for the letter "f." And it depicts 51 in numeral form and the word "fifteen." It thus creates a completely different commercial impression from the mark in the application, which is the number 5.

and registration] evidence," regardless of whether "specifics" pertaining to the extent and impact of such use have been proven. *Juice Generation, Inc. v. GS Enters. LLC,* 794 F.3d 1334, 115 USPQ2d 1671, 1674-5 (Fed. Cir. 2015). "[E]xtensive evidence of third-party use and registrations is 'powerful on its face,' even where the specific extent and impact of the usage has not been established." *Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports, S.L.U.,* 797 F.3d 1363, 116 USPQ2d 1129, 1136 (Fed. Cir. 2015), *cert. denied,* 136 S. Ct. 982 (2016) (citing *Juice Generation v. GS Enters.,* 115 USPQ2d at 1674). However, unlike cases in which extensive evidence of third-party registration and use of similar marks was found to be "powerful on its face" inasmuch as "a considerable number of third parties['] use [of] similar marks was shown," *Juice Generation v. GS Enters.,* 115 USPQ2d at 1674, Applicant has presented no evidence of third-party use, and at most, four third-party registrations of varying probative value (two for non-identical services and the other two for non-identical terms). This is a far cry from the large quantum of evidence of third-party use and third-party registrations that was held to be significant in both *Jack Wolfskin v. New Millennium Sports,* 116 USPQ2d at 1136, and *Juice Generation v. GS Enters.,* 115 USPQ2d at 1674. Accordingly, the number and nature of similar marks in use in connection with restaurant and bar services is a neutral factor.

C.    The similarity or dissimilarity of the marks.

We now turn to the *du Pont* likelihood of confusion factor focusing on the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation, and commercial impression. *du Pont,* 177 USPQ at 567. "Similarity in any one of

these elements may be sufficient to find the marks confusingly similar." *In re Davia*, 110 USPQ2d 1810, 1812 (TTAB 2014); *accord Krim-Ko Corp. v. Coca-Cola Bottling Co.*, 390 F.2d 728, 156 USPQ 523, 526 (CCPA 1968) ("It is sufficient if the similarity in either form, spelling or sound alone is likely to cause confusion.") (citation omitted). In comparing the marks, we are mindful that where, as here, the services are identical, the degree of similarity necessary to find likelihood of confusion need not be as great as where there is a recognizable disparity between the services. *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012); *Century 21 Real Estate Corp. v. Century Life of Am.*, 970 F.2d 874, 23 USPQ2d 1698, 1700 (Fed. Cir. 1992). "The proper test is not a side-by-side comparison of the marks, but instead 'whether the marks are sufficiently similar in terms of their commercial impression' such that persons who encounter the marks would be likely to assume a connection between the parties." *Coach Servs. v. Triumph Learning*, 101 USPQ2d at 1721; *see also Midwestern Pet Foods, Inc. v. Societe des Produits Nestle S.A.,* 685 F.3d 1046, 103 USPQ2d 1435, 1440 (Fed. Cir. 2012). The proper focus is on the recollection of the average customer, who retains a general rather than specific impression of the marks. *See In re St. Helena Hosp.*, 774 F.3d 747, 113 USPQ2d 1082, 1085 (Fed. Cir. 2014); *Geigy Chem. Corp. v. Atlas Chem. Indus., Inc.*, 438 F.2d 1005, 169 USPQ 39, 40 (CCPA 1971). Because the services at issue are "restaurant and bar services," the average customer is an ordinary consumer.

The marks are reproduced below:

Applicant's Mark



Registrant's Mark



The marks are similar because they share the identical term **5IVE** and the highly similar terms "Steak" and "Steakhouse." A "steak" is defined as "a slice of meat or fish, especially beef, cooked by broiling, frying, etc."[15] A "steakhouse" is defined as "a restaurant that specializes in serving steaks."[16] Because the marks are **5IVE** followed by the terms "Steak" or "Steakhouse," they are highly similar in appearance, sound, connotation and commercial impression.

---

[15] Dictionary.com based on the RANDOM HOUSE DICTIONARY (2018). The Board may take judicial notice of dictionary definitions, including online dictionaries that exist in printed format. *In re Cordua Rests. LP*, 110 USPQ2d 1227, 1229 n.4 (TTAB 2014), *aff'd,* 823 F.3d 594, 118 USPQ2d 1632 (Fed. Cir. 2016); *Threshold.TV Inc. v. Metronome Enters. Inc.*, 96 USPQ2d 1031, 1038 n.14 (TTAB 2010); *In re Red Bull GmbH*, 78 USPQ2d 1375, 1378 (TTAB 2006).

[16] OXFORD LIVING DICTIONARIES (oxforddictionaries.com) attached to the September 26, 2016 Office Action (TSDR 11).

Applicant argues that the marks have significant differences in appearance.[17] However, although we assess each mark in its entirety, wording often is considered the dominant feature of a mark comprising both literal and design elements because it is most likely to indicate the source of the services. *See Jack Wolfskin v. New Millennium Sports,* 116 USPQ2d at 1134; *In re Viterra Inc.*, 101 USPQ2d at 1908. In other words, the literal elements of a mark are likely to make a greater impression upon purchasers than any stylization of the words or accompanying designs, and would be remembered by them and used by them to request the services. *See In re Viterra,* 101 USPQ2d at 1908 and 1911 (citing *CBS Inc. v. Morrow,* 708 F.2d 1579, 218 USPQ 198, 200 (Fed. Cir 1983)).

The principle holds true in this case. The knife-and-fork design included in Applicant's mark is a relatively small element of the mark, and is at best suggestive of restaurant services. And while the stylization of the wording in the respective marks is clearly different, the wording is, as noted, highly similar in sound, connotation, and commercial impression. Finally, while it is clear that STEAK and STEAKHOUSE are generic[18] (or at best descriptive) terms for restaurant services, the record does not establish that 5IVE is descriptive, suggestive, or otherwise weak as an indication of source for restaurant services.

---

[17] Applicant's Brief, p. 5 (7 TTABVUE 9).

[18] *Cf. In re Cordua Rests., Inc.*, 823 F.3d 594, 118 USPQ2d 1632, 1637 (Fed. Cir. 2016) (under the facts of the case "churrasco," was found to translate to "steak," and is generic for restaurant services).

In view thereof, we find that the marks are similar in their entireties in terms of appearance, sound, connotation and commercial impression.

D.    Any other established fact probative of the effect of use.

As noted above, Applicant is the owner of Registration No. 3178315, which has been registered for over five years, for the mark 5IVE RESTAURANT and design, reproduced below, for "restaurant and bar services."



Applicant now seeks to register the mark 5IVE STEAKHOUSE and design with the same stylization of the term 5IVE as in its registered mark for "restaurant and bar services." Applicant's applied-for mark differs from Applicant's registered mark in that the word "Steakhouse" replaces the word "Restaurant" and the new mark includes a knife and fork design.

The mark in Applicant's registration and the cited registration have coexisted on the register for over five years. Further, because Applicant's existing registration is over five years old, it is not subject to attack by the owner of the cited registration on a claim of priority and likelihood of confusion. Where an applicant owns a prior registration that is over five years old and the mark is substantially the same as in the applied-for application, this can weigh against finding that there is a likelihood

of confusion. *See, e.g., In re Strategic Partners Inc.,* 102 USPQ2d 1397, 1399 (TTAB 2012) (applicant's prior registration for ANYWEARS in standard characters substantially similar to the applied-for mark ANYWEAR for identical goods). But that is not the case here. In this appeal, Applicant's applied-for mark – 5IVE STEAKHOUSE and design – moves closer to the cited registration – 5IVESTEAK and design – than the mark in Applicant's prior registration – 5IVE RESTAURANT and design – rendering the new mark more similar in appearance, sound, and meaning to Registrant's mark, which includes the word STEAK and does not include the word RESTAURANT. We acknowledge that STEAK, STEAKHOUSE, and RESTAURANT are generic (or at best descriptive) terms, but such terms, in appropriate circumstances, may—and here, do—contribute to the overall commercial impression created by a mark. *See Juice Generation v. GS Enters.,* 115 USPQ2d at 1676 (Board paid insufficient heed to the word JUICE in mark for juice bar services). Because of the similarity in the commercial impression created by the wording 5IVE STEAKHOUSE and 5IVESTEAK in the two marks (a degree of similarity that did not exist between the respective registered marks of Applicant and Registrant), we find that the existence of Applicant's earlier registration is a neutral factor in our determination of likelihood of confusion.

E.    Analyzing the factors.

The marks at issue are very similar, and the services of Applicant and Registrant are identical and are presumed to be offered through the same channels of trade to the same classes of customers. Applicant has not shown that the common element of

the marks, 5IVE, is entitled to a narrow scope of protection. Moreover, we have found that Applicant's earlier registration of a partially similar mark is a neutral factor in our analysis. We find that Applicant's mark so resembles the cited registered mark as to be likely to cause confusion, mistake or deception as to the source of Applicant's services.

**Decision**: The refusal to register Applicant's mark 5IVE STEAKHOUSE and design is affirmed.