**THIS OPINION IS A
PRECEDENT OF THE TTAB**

Mailed:
August 29, 2011

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

Calypso Technology, Inc.

v.

Calypso Capital Management, LP
_____

Opposition No. 91184576
to applications Serial No. 78797405
filed January 23, 2006
and Serial Nos. 78798953 and 78799018
filed on January 25, 2006

Cancellation No. 92049489 to Registration
Nos. 2852353, 2852354 and 2852355
_____

Jonathan P. Froemel and Hae Park-Suk of Barnes & Thornburg
LLP for Calypso Technology, Inc.

Erica D. Klein and Carole E. Klinger of Kramer Levin
Naftalis & Frankel LLP for Calypso Capital Management LP.
_____

Before Seeherman, Quinn and Wolfson, Administrative
Trademark Judges.

Opinion by Seeherman, Administrative Trademark Judge:

Calypso Technology, Inc. (hereafter plaintiff) has

filed a combined opposition and cancellation action.  It

opposes registration by Calypso Capital Management, LP

(hereafter defendant) of the marks CALYPSO CAPITAL MANAGEMENT,[1] CALYPSO QUALIFIED PARTNERS[2] and CALYPSO MASTER FUND,[3] all for "equity investment management and fund services, with a primary focus on United Kingdom and European securities," and has petitioned to cancel defendant's registrations for CALYPSO OVERSEAS,[4] CALYPSO PARTNERS[5] and CALYPSO ADVISORS,[6] for the same services. For all of these marks, defendant has disclaimed exclusive rights to the words other than CALYPSO. As grounds for opposition and cancellation, plaintiff has alleged that defendant did not use any of the subject marks prior to December 29, 1998; that plaintiff was founded in 1998 and since that time has been a provider of computer software to financial institutions for trading applications; that plaintiff owns Registration No. 2769418 for CALYPSO; that the goods for which plaintiff has prior rights are offered in the same channels of trade to the same customers as the services identified in defendant's applications and registrations; and that defendant's marks so resemble

---

[1] Application Serial No. 78799018, filed January 25, 2006, asserting first use and first use in commerce on August 20, 2004.
[2] Application Serial No. 78798953, filed January 25, 2006, and asserting first use and first use in commerce on July 22, 2004.
[3] Application Serial No. 78797405, filed January 23, 2006 and asserting first use and first use in commerce on August 24, 2004.
[4] Registration No. 2852355, issued June 15, 2004, from an application filed January 8, 2001; Section 8 affidavit accepted.
[5] Registration No. 2852354, issued June 15, 2004, from an application filed January 8, 2001; Section 8 affidavit accepted.
[6] Registration No. 2852353, issued June 15, 2004, from an application filed January 8, 2001; Section 8 affidavit accepted.

plaintiff's marks as to be likely, when used in connection with the services of defendant, to cause confusion or to cause mistake or to deceive.

In its answer defendant has denied the salient allegations in the complaint. Defendant has also asserted the affirmative defenses of laches, acquiescence and/or estoppel because plaintiff "has for years been aware of use of [defendant's] marks comprising CALYPSO, or registration(s) of or application(s) to register any or all of such marks, and by its action(s) or omission(s) has induced [defendant] to rely prejudicially thereon." ¶ 16. Defendant has also asserted that plaintiff's claims with respect to the opposed applications are barred because defendant owns prior registrations such that the registrations now sought by defendant would cause no added injury to plaintiff (the so-called Morehouse defense). See Morehouse Mfg. Corp. v. J. Strickland & Co., 407 F.2d 881, 160 USPQ 715 (CCPA 1969).

The Record and Objections

By operation of the rules, the record includes the pleadings and the files of the opposed applications and the registrations sought to be cancelled. With its brief, defendant submitted a five-page list of objections to plaintiff's evidentiary record. Subject to defendant's objections about certain of the materials found therein, the

parties are in agreement that the following evidence is of
record:

> The files of the three opposed applications,
> Serial Nos. 78799018, 78798953 and 78797405;
>
> The files of the three registrations sought to be
> cancelled, Nos. 2852353, 2852354 and 2852355;
>
> Plaintiff's notice of reliance dated March 19,
> 2010, and exhibits thereto;
>
> Plaintiff's supplemental notice of reliance dated
> May 13, 2010, and exhibits thereto;
>
> Plaintiff's rebuttal notice of reliance dated
> August 26, 2010;
>
> Defendant's notice of reliance dated July 12, 2010
> and exhibits thereto;
>
> Trial testimony of defendant's Chief Operating
> Officer, Andrew J. Flinn, taken July 14, 2010, and
> exhibits thereto.

Plaintiff has also listed in its brief, as part of the
description of the record, the trial testimony, with
exhibits, of plaintiff's CEO and Chairman, Charles Hamilton
Marston, taken May 27, 2010, as being of record. However,
the Board, in an order mailed January 21, 2011 (after
plaintiff had filed its brief), granted defendant's motion
to strike this testimony and exhibits. Accordingly, no
consideration has been given to such material.[7] In

---

[7] In defendant's list of objections to plaintiff's evidentiary
record, it includes specific objections to most of the exhibits
submitted with that testimony deposition. Because the Board has
stricken the testimony and exhibits in its entirety, none of the
exhibits is of record and we will not consider whether any of
those exhibits would have been acceptable if submitted under a
notice of reliance. Nor does the fact that plaintiff listed the

addition, the May 27, 2010 Board order stated that any references made in plaintiff's brief to the stricken testimony would be disregarded.

Plaintiff has listed the rebuttal testimony deposition, with exhibits, of Charles Marston, taken on October 12, 2010, as being of record. Defendant has objected to this testimony as improper rebuttal, "submitted for the improper purpose of supporting [plaintiff's] case in chief as purported evidence of tarnishment, rather than to rebut any evidence placed into the record by [defendant]." Objections, p. 3. We view this objection as going only toward Mr. Marston's testimony regarding his view of the effect on plaintiff if customers were to assume a connection

---

testimony deposition with exhibits as item 27 in its notice of reliance result in the exhibits to the deposition being separately considered for whether they are acceptable for submission under a notice of reliance. However, to the extent that plaintiff may have separately submitted the exhibits to the deposition as items under a notice of reliance, we have considered their acceptability.

We note that in its reply brief plaintiff has contended that Mr. Marston's testimony deposition should be considered of record because defendant "has relied on Mr. Marston's testimony, opening the door for [plaintiff] to rely on this testimony as well." Reply brief, p. 9. Plaintiff's argument is rather convoluted. It asserts that in defendant's brief, in making a general statement about the nature of plaintiff's goods, it cited to a page of plaintiff's brief. Plaintiff contends that because that page of its brief cited to Mr. Marston's testimony, defendant relied on that testimony and plaintiff may do so also. We note that the particular statement on that page of plaintiff's brief cited to some 44 exhibits in plaintiff's notices of reliance in addition to citing to Mr. Marston's testimony. We do not read defendant's actions as relying on Mr. Marston's testimony or otherwise stipulating that the testimony of Mr. Marston is of record. On the contrary, defendant's brief states several times that Mr. Marston's testimony and accompanying exhibits have been stricken.

between plaintiff and hedge funds. We note that the only testimony or evidence regarding negative publicity for hedge funds that was submitted as part of defendant's testimony was elicited by plaintiff during the cross-examination of defendant's witness, Andrew Flinn. However, during that cross-examination defendant's counsel objected only to the following question, and did so on the basis that it was "vague and ambiguous," not on the basis that it was outside the scope of direct examination:

> Have you, during the most recent economic crisis, seen negative publicity related to certain hedge funds in journals and periodicals related to the financial industry?

Flinn, p. 45. In the circumstances, we have considered the rebuttal testimony of Mr. Marston. We point out, though, with respect to defendant's contention that the rebuttal testimony was purported evidence of tarnishment, that we do not regard the use of the term "tarnishment" as referencing a dilution by tarnishment ground; such a ground was neither pleaded nor tried. In fact, in its main brief plaintiff makes clear that "the sole issue is whether there is likelihood of confusion." p. 3. Further, the evidence submitted by plaintiff regarding negative publicity or reactions to hedge funds has limited probative value; if defendant's use of its marks is likely to cause confusion

6

plaintiff will succeed on its claim, whether or not the confusion will result in a negative association.

Defendant has also objected to certain materials submitted with plaintiff's notice of reliance, supplemental notice of reliance and rebuttal notice of reliance. Plaintiff has not responded to the specific objections, stating only that defendant has relied on "many of the same exhibits it seeks to strike."  Reply brief, p. 17. Plaintiff asserts that in defendant's brief defendant has cited to certain of plaintiff's exhibits, specifically to plaintiff's supplemental notice of reliance exhibits 2 and 55 (allegedly cited at p. 4 of defendant's brief) and to plaintiff's supplemental notice of reliance exhibits 10-24, 28—30 and 33-55 (allegedly cited at pp. 20 and 26 of defendant's brief), and also asserts that defendant relies on the same *types* of evidence as submitted by plaintiff in support of its case.  Plaintiff's position is that defendant "cannot object to the introduction of these types of evidence, yet also rely on such evidence."  Id.  Contrary to plaintiff's contention, the pages of defendant's brief indicated by plaintiff in which it has supposedly cited to plaintiff's exhibits do not include cites to any exhibits other than exhibit A to exhibit 2 of the notice of reliance, and to that portion of exhibit 4 consisting of defendant's response to Interrogatory 44, and exhibits 7, 25 and 33 of

the supplemental notice of reliance.  Defendant has not objected to these exhibits, with the exception that defendant has objected that plaintiff may not rely on any evidence for the truth of the matters asserted therein, as that would be hearsay.  This objection goes to the probative value of the exhibits, rather than their admissibility.  As for the *types* of evidence made of record by defendant, all of the evidence submitted by defendant complied with the trademark rules for making evidence of record by notice of reliance; as detailed below, much of plaintiff's evidence is not of the same type, nor did it comply with the trademark rules.

A party seeking to make evidence of record by notice of reliance must follow the rules and case law; if material cannot be made of record by notice of reliance it will not be considered even if the adverse party does not specifically object to it, as long as the adverse party does not specifically treat it as of record such that we can say it has been stipulated into the record.  Thus, we will now consider each of the items submitted with plaintiff's notices of reliance, along with defendant's objections thereto.  With its first notice of reliance, plaintiff submitted the affidavit of Robert D. Finnell, which had been previously submitted in connection with plaintiff's memorandum in support of plaintiff's motion for summary

judgment. As defendant has pointed out, there is no stipulation between the parties permitting the submission of testimony by affidavit. See Trademark Rule 2.123(b). Nor did Mr. Finnell authenticate the affidavit as part of a trial testimony deposition. Cf. Levi Strauss & Co. v. R. Josephs Sportswear Inc., 28 USPQ2d 1464, 1465 n.2 (TTAB 1993). Accordingly, the affidavit itself (Item 1 of the notice of reliance) is excluded. However, Exhibit A to the affidavit (item 2 of the notice of reliance) consists of pages downloaded from the website www.calypso.com, and they contain both the URL and the date that they were printed. This exhibit is proper material for a notice of reliance, and we have therefore considered it. See Safer Inc. v. OMS Investments Inc., 94 USPQ2d 1031 (TTAB 2010). None of the other attachments to the Finnell affidavit may be made of record by notice of reliance, and therefore the emails (item 3 listed in the notice of reliance) are not of record. Item 4 of the notice of reliance, defendant's responses to plaintiff's interrogatories and requests for production of documents, is properly of record. See Trademark Rule 2.120(j)(3)(i).[8]

---

[8] Documents produced in response to document production requests cannot be made of record by notice of reliance, see Trademark Rule 2.120(j)(3)(ii); however, plaintiff did not submit any documents with the notice of reliance, only defendant's responses consisting of objections or a representation that documents would be produced. Cf. L.C. Licensing Inc. v. Berman, 86 USPQ2d 1883, n. 5 (TTAB 2008).

Item 5 of the notice of reliance consists of the affidavit of Hae Park-Suk. Again, the parties did not stipulate to the submission of testimony by affidavit, and therefore we will not consider the affidavit itself. However, the exhibits to the affidavit (item 6 of the notice of reliance) that consist of printouts of applications and registrations, taken from the TESS database of the U.S. Patent and Trademark Office, may be made of record by notice of reliance pursuant to Trademark Rule 2.122(e) because they are official records. On the other hand, the pages included in the exhibits consisting of summaries of search results are not official records, and they have not been considered.

Item 7 of the notice of reliance is a "soft" copy of plaintiff's pleaded Registration No. 2769418, issued September 30, 2003, from an application filed December 29, 1998, for CALYPSO for "computer software for use by financial institutions for core processing and control." Plaintiff has also furnished a page from the USPTO's assignment records database showing title in the registration in plaintiff, as recorded on September 30, 2009. Although this submission would not be sufficient to make this registration of record, as plaintiff did not provide any evidence as to the current status of the registration, with its supplemental notice of reliance plaintiff submitted a record from the USPTO's TARR database

10

showing that Section 8 and 15 affidavits have been accepted and acknowledged.  Accordingly, plaintiff has submitted adequate information as to the registration's title and status, and the pleaded registration is of record.  See Research in Motion Ltd. v. NBOR Corp., 92 USPQ2d 1926, 1928 (TTAB 2009).

Plaintiff has submitted with its notice of reliance the declaration of Erica D. Klein, one of defendant's attorneys, which had been previously submitted by defendant in opposition to plaintiff's summary judgment motion.  However, plaintiff has not listed the declaration itself as one of the items in its notice of reliance.  Moreover, there is no stipulation that this declaration could be submitted as testimony.  Thus, it is not of record.  Plaintiff does rely on "the Trademark Office search results attached by [defendant] as Exhibit B" to the Klein declaration (item 8 of the notice of reliance); they consist of summary listings of marks retrieved from searches of the USPTO TESS database showing the words in the mark, the application serial number and, if registered, the registration number, and the status of the application/registration.  Although taken from the Office's database, such search summaries are not considered to be official records, and therefore they (Exhibits B-1 – B-5) are not properly made of record by notice of reliance. Plaintiff has made no mention of Exhibits B-6 and B-7 as

11

items on which it relies, and therefore we do not consider them to be of record.

Item 9 of the notice of reliance is a second affidavit of Hae Park-Suk, with exhibits. Again, we cannot consider affidavit testimony, or the attached exhibits consisting of lists from the USPTO TESS database, but the exhibits consisting of third-party trademark registrations are admissible as official records.

Items 10 through 22 are described by plaintiff as its own printed publications, but the mere fact that they are printed materials does not make them printed publications that can be made of record by notice of reliance pursuant to Trademark Rule 2.122(e). They appear to be plaintiff's brochures, but there is no indication that they are "printed publications, such as books and periodicals, available to the general public in libraries or of general circulation among members of the public or that segment of the public which is relevant under an issue in a proceeding." Id. Certainly if these materials are in general circulation it was incumbent on plaintiff to show this in response to defendant's objection. These materials have not been considered.

Item 23 of the notice of reliance is what plaintiff describes as a "press release compilation" called Cognito. Although plaintiff states in its notice of reliance that the

entire compilation was published on its website, there is no web address on this submission showing that it was downloaded from the website. However, because this item is a compilation of individual articles appearing either in printed publications or online, and shows the publication name or URL and date of issue of each article, this item is admissible under Trademark Rule 2.122(e) and Safer Inc. v. OMS Investments Inc., <u>supra</u>.

Item 24, described by plaintiff as a printed publication published on its website in 2008-2009 is not acceptable as a printed publication, nor can it be accepted pursuant to <u>Safer</u>, since it does not bear the date the material was either published or printed.

The final item, 25, in plaintiff's notice of reliance is plaintiff's own answers to defendant's first set of interrogatories. Because an answer to an interrogatory may be submitted and made part of the record only by the inquiring party, this item would normally not be considered. See Trademark Rule 2.120(j)(5).[9] However, defendant

---

[9] This rule also provides that, if fewer than all of the interrogatories or other discovery responses are offered in evidence by the inquiring party, the responding party may introduce other answers to interrogatories, etc., which should in fairness be considered so as to make not misleading what was offered by the inquiring party, in which case the notice of reliance must be supported by a written statement explaining why the responding party had to rely upon each of the additional discovery responses. That exception does not apply to the instant situation. Not only did plaintiff submit its interrogatory answers prior to defendant's submitting any of

submitted the non-confidential portions of plaintiff's responses through its own notice of reliance. To this extent only, they are of record.

Plaintiff also submitted a supplemental notice of reliance during its main testimony period. The first 25 items listed in this notice of reliance were previously submitted with plaintiff's first notice of reliance, and already discussed above. As a general comment with respect to these duplicate submissions, the Board frowns on submitting duplicate evidence; it merely adds to the bulk of the record and wastes the time of Board staff in handling or scanning the papers and the time of the judges in reviewing the additional papers. We note that plaintiff has provided certain additional information regarding item 17, stating that the Corporate Overview was published on plaintiff's website in 2008-2009. However, providing the general dates of the period when webpages might be found on a website does not meet the requirements of Safer Inc. v. OMS Investments Inc., 94 USPQ2d at 1039, that the webpages must show the date of publication or the date that they were accessed and printed. Thus, this item is not properly of record.

Item 26 of the supplemental notice of reliance states that plaintiff "relies on the testimony and exhibits from the testimony deposition of Robert Finnell, which may be

plaintiff's discovery responses, but it sought to submit *all* of

14

taken by agreement of the parties outside of [plaintiff's] testimony period," while Item 27 relies on the testimony and exhibits from the testimony deposition of Charles Marston. As noted in the Board's January 21, 2001 order, at footnote 4, notices of reliance are not to be used to state a party's reliance on testimony depositions, and a testimony deposition need not be submitted under a notice of reliance. That same order granted defendant's motion to strike the testimony of Mr. Marston and, therefore, as previously noted, this testimony and the exhibits thereto are not of record. As for Mr. Finnell's deposition, apparently such testimony deposition was not taken, since it is not listed as part of the record by either plaintiff or defendant in their respective briefs, nor has it been submitted. Thus, Items 26 and 27 are not part of the record.

Items 28, 29 and 30 are press releases taken from an internet site called Bobsguide. The releases show their publication date, but the URL at which the webpages can be found does not appear on them. Safer clearly states that the document itself must identify its source (URL). Because these webpages do not do so, they cannot be considered.

Item 31 is an attendee list of a symposium; there is no information as to the date the webpages were published or printed. Accordingly, this item is not of record.

---

its answers.

Items 32 and 33 are webpages and include the URLs and the dates the webpages appeared, while items 34 through 55 are articles taken from the NEXIS database. Items 32 and 33 are admissible under Safer, and the other items are printed publications admissible under Trademark Rule 2.122(e). Item 56, a notice of opposition filed by defendant in connection with a third-party application, is an official record. Item 57, webpages taken from plaintiff's website and showing the URL and date they were printed, are admissible under Safer. Finally, item 58 is not admissible under Safer; it is not clear that they are even webpages, but even if we assume they are, they do not show the date the webpages were published or printed. Plaintiff's statement in the notice of reliance that they were published in "2010" is not a substitute; the specific date that the webpages were published or printed must appear on the webpages themselves.

Defendant has submitted, under notice of reliance, certain of plaintiff's answers to defendant's first set of interrogatories;[10] certain third-party registrations; and one magazine, admissible as a printed publication.

Plaintiff has submitted, under a rebuttal notice of reliance, several affidavits, with exhibits, of Hae Park Suk. Again, the affidavits themselves are not properly of record, since the parties have not stipulated that testimony

16

can be submitted in this manner.[11]  As for the exhibits submitted with that testimony, they consist of pages taken from the USPTO's TESS and TARR databases and various webpages.  The summary listings of third-party applications and registrations retrieved from searches of terms in the USPTO's TESS database are not official records and therefore are not appropriate material for a notice of reliance.  However, the electronic versions of the registrations are official records.  In addition, those webpages downloaded from websites, showing the URL and date the page was printed, are of record under Safer.  However, we note that part of Exhibit A to the Suk affidavit regarding the term QUALIFIED PARTNERS consists primarily of a Google search results summary.  The Safer holding allowing documents printed from internet websites to be made of record by notice of reliance does not apply to such search summaries, which are more in the nature of listings of documents, i.e., the website pages that the summary links to, than to the documents per se.

---

[10]  Defendant filed only the non-confidential responses to its interrogatories.
[11]  It is noted that plaintiff submitted several different affidavits of Ms. Suk in one ESTTA filing.  When the parties have agreed, or the Board has granted leave, to file testimony by affidavit, it is preferable to submit separate filings for each affidavit, particularly when each affidavit includes many pages of exhibits, to insure that the separate affidavits will be indexed in the record of the Board proceeding.

In summary, the items listed in plaintiff's first and supplemental notices of reliance that are properly of record are Nos. 2, 4 (to the extent defendant made the discovery responses of record), 6 (copies of applications and registrations only), 7, 9 (copies of third-party registrations only), 23, 25 and 32-57.  All of the exhibits (but not the affidavits) submitted under plaintiff's rebuttal notice of reliance are of record with the exception of the listings retrieved from the TESS searches, and the Google search results summary submitted with the affidavit regarding the term "qualified partners."  All of the exhibits submitted by defendant under notice of reliance are of record.

We have accorded the various exhibits submitted by the parties their appropriate weight.  In particular, with respect to articles and other material published on websites or in publications, we have considered them only for the fact that they have been published and may have been viewed, but not for the truth of the statements made in them.

Standing

Plaintiff has shown, through its registration for CALYPSO, that it has a personal stake in the outcome of this proceeding.  Therefore, plaintiff has established its standing.  See Cunningham v. Laser Golf Corp., 222 F.3d 943,

18

55 USPQ2d 1842 (Fed. Cir. 2000); Lipton Industries, Inc. v. Ralston Purina Co., 670 F.2d 1024, 213 USPQ 185 (CCPA 1982).

Priority

In view of plaintiff's registration for CALYPSO, priority is not in issue in the opposition proceeding. See King Candy Company v. Eunice King's Kitchen, Inc., 496 F.2d 1400, 182 USPQ 108 (CCPA 1974). With respect to the cancellation proceeding, because both parties have registrations, it is plaintiff's burden to demonstrate that its use of its CALYPSO mark is prior to defendant's use of its registered marks. Brewski Beer Co. v. Brewski Brothers, Inc., 47 USPQ2d 1281, 1284 (TTAB 1998). During its testimony period, the only evidence regarding priority that was properly made of record by plaintiff is its registration for CALYPSO. Although defendant made of record plaintiff's answers to defendant's interrogatories, and Interrogatory 8 requested the dates of first use of each of plaintiff's marks in commerce, plaintiff did not answer that part of the interrogatory, stating only that "it commenced operations in 1998, continued to build and develop [plaintiff's] Goods and/or Services, provided services to prospects in connection with identifying their capital market product needs and installed versions of [plaintiff's] Goods and/or

19

Services at least as early as August 1999."[12]  This answer does not provide any information as to when plaintiff began to use CALYPSO as a trademark on goods or services.  Thus, plaintiff may only rely on the December 29, 1998 filing date of the application which matured into its pleaded registration.  As for defendant, not having submitted any evidence of earlier use,[13] it may rely on the January 8, 2001 filing dates of the applications which matured into the registrations sought to be cancelled.  Accordingly, plaintiff has demonstrated its priority in connection with the cancellation proceeding.

Likelihood of confusion

Our determination of the issue of likelihood of confusion is based on an analysis of all of the probative facts in evidence that are relevant to the factors set forth in In re E. I. du Pont de Nemours & Co., 476 F.2d 1357, 177 USPQ 563 (CCPA 1973).  See also, In re Majestic Distilling Co., Inc., 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003).

---

[12]  During its rebuttal testimony period plaintiff did not submit any evidence of its first use, but even if it had, it would not have been acceptable rebuttal, since proving priority is part of a plaintiff's case in chief.

[13]  Plaintiff submitted defendant's interrogatory response that it "commenced its business in 1999, and has continued to develop and operate its funds from at least as early as October 14, 1999 to the present."  Response to Interrogatory No. 11, submitted as Item 4 of plaintiff's notice of reliance.  This response does not indicate when defendant began to use any of the trademarks at issue in this proceeding for its identified services, and therefore is insufficient to prove 1999 as defendant's date of first use of any of its marks.

20

Plaintiff's mark is CALYPSO; defendant's marks all begin with CALYPSO, followed by descriptive terms for its services, terms which defendant has acknowledged are "widely and typically used in connection with equity investment management and fund services," brief, p. 10, and which it has disclaimed. It is a well-established principle that, in articulating reasons for reaching a conclusion on the issue of likelihood of confusion, there is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a mark, provided the ultimate conclusion rests on a consideration of the marks in their entireties. In re National Data Corp., 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985). In this case, the additional wording in defendant's marks does not serve to distinguish its marks from plaintiff's. Instead, those words provide information about defendant's services or are terms used generally for such services. Thus, consumers will look to the arbitrary word CALYPSO in defendant's marks as having the source-indicating significance.

Although we have found that the parties' marks are similar, that does not end the inquiry. Even if marks are identical, the goods and services must also be sufficiently related and/or the circumstances surrounding their marketing be such that purchasers encountering them would mistakenly

believe that they emanate from the same source for us to find that confusion is likely to occur.  Standard Knitting Ltd. v. Toyota Jidosha Kabushiki Kaisha, 77 USPQ2d 1917, 1930 (TTAB 2006).  In any likelihood of confusion analysis, two key considerations are the similarities between the marks and the similarities between the goods and/or services.  See Federated Foods, Inc. v. Fort Howard Paper Co., 544 F.2d 1098, 192 USPQ 24 (CCPA 1976).  See also, In re Dixie Restaurants Inc., 105 F.3d 1405, 41 USPQ2d 1531 (Fed. Cir. 1997).  We therefore turn to a consideration of the parties' goods and services.  In its pleading, plaintiff alleges broadly that it has been a leading provider of "computer software to financial institutions for trading applications."  ¶ 8.  However, plaintiff has not properly made of record any evidence regarding its actual use of the mark CALYPSO.[14]  Therefore, plaintiff's rights in its mark are limited to its registration, which identifies its goods as "computer software for use by financial institutions for core processing and control."  Defendant's services, as identified in the opposed applications and the registration sought to be cancelled, are "equity investment management and fund services, with a primary focus on United Kingdom

---

[14]  Although plaintiff has submitted printouts from its webpages pursuant to a notice of reliance, the printouts are not evidence of the statements made in the printouts.

and European securities." Defendant essentially operates a hedge fund, or actually several funds.

There is clearly some connection between plaintiff's goods and defendant's services, as both are in the financial field. Plaintiff's software is specifically identified as being for use by financial institutions. And defendant's "equity investment management and fund services," and more specifically, hedge fund services, involve financial investing. However, in order to find that goods and services are related, there must be more of a connection than that a single term, in this case "financial field," may be used to generally describe them. See In re W.W. Henry Co., 82 USPQ2d 1213, 1215 (TTAB 2007) (it is not sufficient that a particular term may be found which may broadly describe the goods); General Electric Co. v. Graham Magnetics Inc., 197 USPQ 690, 694 (TTAB 1977) (it is, however, not enough to find one term that may generically describe the goods).

Plaintiff has attempted to show a connection between its goods and defendant's services by submitting third-party registrations which include goods and services covering financial software and financial services. Third-party registrations which individually cover a number of different items and which are based on use in commerce serve to suggest that the listed goods and/or services are of a type

which may emanate from a single source. See In re Albert Trostel & Sons Co., 29 USPQ2d 1783 (TTAB 1993). However, none of the registrations submitted by plaintiff is based on use in commerce; rather, they are all based on international registrations, and therefore there is no evidence that any of the marks have been used in the United States for goods and services that are the same as those of the parties herein.[15]

There is simply no evidence of record that shows that "computer software for use by financial institutions for core processing and control" and "equity investment management and fund services" are ever offered by a single company. Again, while both plaintiff's software and defendant's investment management and fund services are both concerned with activities in the financial world, plaintiff has failed to show the necessary connection that would cause the consumers of these goods and services to believe that they emanate from a single source if they were offered under similar marks.

There is evidence that the same institutions that would purchase computer software of the type sold by plaintiff would also avail themselves of the investment management and

---

[15] No Section 8 affidavits of continuing use have been filed for any of these registrations; with one exception, these registrations are less than five years old.

fund services offered by defendant.[16]  However, there is no evidence that the same people at the financial institutions make the decision to purchase investor services also choose to purchase computer software for core processing and control.  See Electronic Design & Sales Inc. v. Electronic Data Systems Corp., 954 F.2d 713, 21 USPQ2d 1388, 1391 (Fed. Cir. 1992) (the mere purchase of the goods and services of both parties by the same institution does not, by itself, establish similarity of trade channels or overlap of customers); Electronic Data Systems Corp. v. EDSA Micro Corp., 23 USPQ2d 1460, 1465 (TTAB 1992) (the fact that a large company, which buys a myriad of different products and services, may purchase opposer's and applicant's services and goods, does not either make the services and goods related or demonstrate that confusion is likely to occur because of the use of similar marks).  Plaintiff points out that defendant's CFO, Andrew Flinn, attended a meeting with plaintiff's representatives at defendant's offices at which plaintiff tried to sell defendant its software, and that Mr. Flinn also is involved with recruiting investment customers. From this, plaintiff concludes that "the same individuals within the same types of financial institutions are involved in both the hedge fund services of [defendant], and in the decision to procure goods like [plaintiff's]."  Reply brief,

---

[16]  This evidence has been marked confidential, so we will not

p. 5.   However, Mr. Flinn's involvement as the <u>purveyor</u> of investment management and fund services does not show that a <u>customer</u> for such services would also be involved in the purchase of computer software for core processing and control for his or her financial institution.  (In fact, there is no evidence that defendant purchases, as opposed to offering, investment management services at all.)

The <u>du Pont</u> factor of the similarity of the goods and services favors defendant.

An additional factor favoring defendant is the sophistication of the purchasers of the respective goods and services.  Because plaintiff's goods are specifically identified as "computer software for use by financial institutions for core processing and control," its customers are limited to financial institutions.  Therefore, the only overlap in terms of customers for defendant's services are financial institutions as well.  We are not dealing here with an individual with a few dollars to invest.  Mr. Flinn testified that, due to SEC regulations, its institutional customers must have investment assets of $25 million.  It is not clear whether the SEC requires that all financial institutions who obtain "equity investment management and fund services, with a primary focus on United Kingdom and European securities" have investment assets of $25 million,

_____

give any details about it.

but it is obvious that financial institutions using these services will be investing large sums of money, and will be extremely careful and sophisticated purchasers.  As for plaintiff's software, Mr. Flinn stated that the software proposed by plaintiff for defendant would cost in excess of $1 million, and that the software that defendant actually did purchase from a different party was in the $200,000-$300,000 range.  Thus, because of the cost and the purpose of the software, the financial institutions purchasing software for core processing and control will be careful and sophisticated as well.

Such consumers are not likely to assume that such disparate goods and services as plaintiff's particular computer software and defendant's identified hedge fund services emanate from the same source merely because they are offered under the similar marks CALYPSO and CALYPSO with additional descriptive wording.  First, there is no evidence that the same individuals within a financial institution would be involved with the purchase of these different goods and services.  Even if they were, plaintiff has not shown that they would have any reason to think that the goods and services would come from a common source.  There is simply no evidence that computer services for core processing and control and equity investment management and fund services are ever rendered by a single entity.  And the sophisticated

27

purchasers involved in these purchasing decisions would be aware of the practices of the industry, and recognize that such goods and services do not emanate from a single source.[17]

Essentially plaintiff would have us find confusion simply because of the similarity of the marks. But this is not a sufficient basis for doing so.

As for the du Pont factor of fame, plaintiff has not shown that its mark is famous. There is no evidence of record regarding the extent of sales or advertising. Although plaintiff has made of record some articles, many are about the company rather than about the trademark CALYPSO for the particular computer software. It is the duty of a party asserting that its mark is famous to clearly prove it. Leading Jewelers Guild Inc. v. LJOW Holdings LLC, 82 USPQ2d 1901, 1904 (TTAB 2007). We simply cannot conclude, from a few articles and plaintiff's promotion of

---

[17] Plaintiff has argued that the parties attend similar types of conference and events in the financial industry. However, there is no evidence of record to support this. The evidence shows that plaintiff has used its mark at the SIBOS Conference trade event, see plaintiff's response to Interrogatory 16, made of record by defendant, while defendant has attended business networking events at the Annual Goldman Sachs Prime Brokerage Emerging Managers Hedge Fund Conference and the Annual U.S. Manager Forum. Defendant's response to Interrogatory Nos. 30 and 31, made of record by plaintiff. There is also evidence, Item 32 of plaintiff's supplemental notice of reliance, that defendant's General Counsel and Chief Compliance Officer, Shawn Singh, was listed as a panelist at something called the "3rd Annual Hedge Fund Operations & Technology," but there is no information about the nature of this conference or that plaintiff attended or participated in it.

its mark on its own website, that CALYPSO is a famous mark for computer software for use by financial institutions for core processing and control.

We do find that plaintiff's mark is arbitrary and strong. There is no evidence of third-party use of CALYPSO for software used by financial institutions. Defendant has submitted evidence of third-party registrations for CALYPSO or marks containing the word CALYPSO, including, in the software area, three owned by one entity for computer software for use in connection with medical diagnostic imaging and the like, and one owned by a different company for measuring machines and software used in connection with them. Such registrations are not evidence of use of the marks in the marketplace, and they do not show that the public is familiar with them. See Olde Tyme Foods Inc. v. Roundy's Inc., 961 F.2d 200, 22 USPQ2d 1542, 1545 (Fed. Cir. 1992) and AMF Inc. v. American Leisure Products, Inc., 474 F.2d 1403, 177 USPQ 268, 269 (CCPA 1973). We recognize that third-party registrations may be used in the manner of dictionary definitions, to show that a term has a significance in a particular industry. See Tektronix, Inc. v. Daktronics, Inc., 187 USPQ 588 (TTAB 1975). However, the goods in these third-party registrations are so different from plaintiff's goods that we can ascribe no suggestive significance to CALYPSO for plaintiff's identified goods.

There is no probative evidence of record showing actual confusion. Defendant has made of record plaintiff's response to its Interrogatory 29, in which defendant requested that plaintiff describe every instance of confusion known to it. Plaintiff's answer was that it "identifies an email from an investment research company, Morningstar, Inc., dated July 28, 2008 to [plaintiff's] Sales Department Email address, inquiring about [defendant's] funds, specifically CALYPSO GLOBAL OPPORTUNITIES FUND, LTD., CALYPSO MASTER FUND, LTD. and CALYPSO OVERSEAS, LTD." In view of the fact that this response is merely plaintiff's report/characterization of an email, the response has no probative value as evidencing actual confusion.[18] As for the companion du Pont factor of the length of time during and conditions under which there has been concurrent use without evidence of actual confusion, there is no evidence as to the extent of either plaintiff's or defendant's use and advertising such that we can conclude that there has been an opportunity for confusion to occur if it were likely to occur. These du Pont factors are neutral.

Because plaintiff has not properly submitted any evidence of its actual use of its mark, the du Pont factor

---

[18] We are, however, puzzled as to why defendant would choose to submit this response under its own notice of reliance when it objected to plaintiff's submission of the underlying email.

of the variety of goods on which plaintiff's mark is used is neutral. Further, because of the limited number of overlapping potential purchasers of the parties' goods and services, and their sophistication, the extent of potential confusion is de minimis.

There is no evidence that plaintiff has excluded others from the use of its mark, but there is also no evidence that plaintiff has had to take any such actions. We treat these factors as neutral.

Neither party has argued that there is any market interface. Therefore, we treat this factor as neutral.

Finally, plaintiff points to the fact that defendant filed an opposition against a third party's application to register BLUE CALYPSO for "providing electronic advertisement distribution via computer networks." Defendant has provided an explanation for its actions in its brief, but there is no evidence of record to support it, and therefore we have not considered it. As for defendant's position in that opposition, it is not an admission, but may be considered only as illuminative of shade and tone in the total picture. See Interstate Brands Corporation v. Celestial Seasonings, Inc., 576 F.2d 926, 198 USPQ 151 (CCPA 1978). In the present case, because the goods in the third-party application are substantially different from plaintiff's goods herein, we do not regard that opposition

as indicating in any way that defendant believes there is a likelihood of confusion between use of its mark for its services and plaintiff's use of its mark for its goods.

Balancing the factors

Any of the du Pont factors may play a dominant role from case to case. In re E. I. du Pont de Nemours & Co., 476 F.2d 1357, 177 USPQ at 567. In fact, a single factor may be dispositive. Kellogg Co. v. Pack'em Enterprises Inc., 951 F.2d 330, 21 USPQ2d 1142 (Fed. Cir. 1991). In the present case, the factors of the dissimilarity of the goods and services and the sophistication of the customers strongly outweigh the factors, such as similarity of the marks and the strength of plaintiff's mark, that would favor a finding of likelihood of confusion. Accordingly, we find that plaintiff has failed to prove that defendant's use of its marks for "equity investment management and fund services, with a primary focus on United Kingdom and European securities" is likely to cause confusion with plaintiff's mark for CALYPSO for "computer software for use by financial institutions for core processing and control."

Affirmative defenses

In view of our finding on likelihood of confusion, we need not consider defendant's affirmative defenses.

Decision

32

The opposition and the petition to cancel are dismissed with respect to the three opposed applications and the three registrations sought to be cancelled.